1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
  Brook B. Roberts (SBN: 214794)
    (*brook.roberts@lw.com*)
  James A. Tabb (SBN: 208188)
    (*jimmy.tabb@lw.com*)
  Michael L. Huggins (SBN: 305562)
    (*michael.huggins@lw.com*)
12670 High Bluff Drive
San Diego, California 92130
Telephone: +1.858.523.5400
Facsimile: +1.858.523.5450

Attorneys for Plaintiff
Kunde Enterprises, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| KUNDE ENTERPRISES, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>NATIONAL SURETY CORPORATION,<br><br>    Defendant. | CASE NO. 4:19-cv-06636-JSW<br><br>**PLAINTIFF KUNDE ENTERPRISES, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date: May 6, 2022<br>Time:  9:00 a.m.<br>Courtroom:  5<br><br>Pre-Trial Conference Date:  March 14, 2022<br>Trial Date:  May 16, 2022 |

1

## NOTICE OF MOTION

2    PLEASE TAKE NOTICE that on May 6, 2022 at 9:00 a.m., Plaintiff Kunde Enterprises,

3  Inc. ("Kunde") will and hereby does move this Court for an order granting partial summary

4  judgment in favor of Kunde, and against Defendant National Surety Corporation ("National

5  Surety"), pursuant to Federal Rule of Civil Procedure 56(a), in Courtroom 5 of the Oakland

6  Courthouse, 1301 Clay Street, 2nd Floor, Oakland, California 94612.  Specifically, Kunde seeks

7  summary judgment in its favor on its First Cause of Action (for breach of contract) and Second

8  Cause of Action (for declaratory relief).[1]

9    Partial summary judgment should be granted in Kunde's favor because the undisputed

10  facts establish that the "all risks" property insurance policy that National Surety sold to Kunde

11  covers its losses due to smoke taint damage to its wines caused by wildfires, and because

12  National Surety cannot carry its burden of establishing that an exclusion applies.  Kunde's

13  Motion is based upon this Notice of Motion; the accompanying Memorandum of Points and

14  Authorities, Stipulated Facts for the Parties' Cross-Motions for Summary Judgment, Joint

15  Appendix of Exhibits for the Parties' Cross-Motions for Summary Judgment and exhibits

16  attached thereto, Joint Administrative Motion to File under Seal Exhibits 3 and 13 in Support of

17  Parties' Cross-Motions for Summary Judgment and Declaration of James A. Tabb in support

18  thereof, Declaration of Pat Roney, Declaration of Zach Long, Declaration of Dr. Richard G.

19  Peterson, Declaration of James Tabb, and Request for Judicial Notice in Support of Kunde's

20  Motion for Partial Summary Judgment; the papers and records on file in this action; and such

21  other written and oral argument and evidence as may be presented to the Court.

22

23

24

25

26

27

28

---

[1] Kunde does not seek summary judgment on its Third Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing (Bad Faith).

1    DATED:          February 18, 2022          LATHAM & WATKINS LLP

2                                               */s/ James A. Tabb*
                                                Brook B. Roberts # 214794CA
3                                               James A. Tabb # 208188CA
                                                Michael L. Huggins # 305562CA
4                                               LATHAM & WATKINS LLP
                                                12670 High Bluff Drive
5                                               San Diego, CA 92130
                                                858.523.5400 telephone
6                                               858.523.5450 fax
                                                brook.roberts@lw.com
7                                               jimmy.tabb@lw.com
                                                michael.huggins@lw.com
8

9                                               *Attorneys for Plaintiff Kunde Enterprises, Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ......................................................................................................... 1

II. BACKGROUND ......................................................................................................... 2

    A. The Winemaking Process at Kunde ................................................................ 2

    B. The Policy ........................................................................................................ 3

    C. The Wildfire and Resulting Smoke Taint to Kunde's Wines .......................... 4

    D. Kunde's Loss ................................................................................................... 6

    E. National Surety's Denial of Coverage ............................................................ 7

III. LEGAL STANDARDS ............................................................................................... 9

    A. Summary Judgment Standards ........................................................................ 9

    B. The Relative Burdens Under An "All Risks" Policy ...................................... 9

IV. THE COURT SHOULD DECLARE THAT NATIONAL SURETY HAS
A DUTY TO PAY KUNDE FOR ITS LOSS (FIRST CAUSE OF
ACTION) ................................................................................................................... 10

    A. Kunde easily meets it *prima facie* burden ................................................... 10

    B. The Policy Does Not Exclude Losses Caused by Smoke Taint ..................... 10

        1. National Surety Cannot Prove That Kunde's Losses Fall
Within The "Spoilage" Exclusion .................................................... 11

        2. National Surety Cannot Prove That Kunde's Losses Are
Subject To The Perishable Stock Coverage $1 Million
Sublimit ............................................................................................. 12

    C. National Surety Also Cannot Prove That The Fire Lot Wines Are
Excluded Due To Alleged Smoke Damage To Grapes On The Vine ............. 13

        1. There Is No Exclusion For Smoke Tainting To Wine
Caused By Smoke Damage To Grapes On The Vine .......................... 14

        2. National Surety Cannot Prove That Any Grapes Used To
Make The Fire Lot Wines Were Damaged By Smoke
While On The Vine ............................................................................ 15

        3. National Surety Cannot Prove That Any Smoke Damage
To Grapes On The Vine Was The Efficient Proximate
Cause Of Smoke Taint To The Finished Wines Given The
Smoke Exposure In Kunde's Facilities ............................................. 16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

V.      THE COURT SHOULD SUMMARILY ADJUDICATE NATIONAL
        SURETY'S BREACH (SECOND CAUSE OF ACTION) ............................................ 17

VI.     CONCLUSION ........................................................................................................ 17

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*1901 First St. Owner, LLC v. Tustin Unified Sch. Dist.*,
   21 Cal. App. 5th 1186 (2018) .................................................................................12

*AIU Ins. Co. v. Super. Ct.*,
   51 Cal. 3d 807 (1990) ..............................................................................11, 12, 13

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ..............................................................................................15

*Atain Specialty Ins. Co. v. Szetela*,
   2016 WL 1138139 (E.D. Cal. Mar. 23, 2016) .......................................................11

*Benavides v. State Farm Gen. Ins.1241 (2006)*
   136 Cal. App. 4th 1241 (2006) .................................................................................9

*C.H. Leavell & Co. v. Fireman's Fund Ins. Co.*,
   372 F.2d 784 (9th Cir. 1967) ....................................................................................9

*Century Transit Sys., Inc. v. Am. Empire Surplus Lines Ins. Co.*,
   42 Cal. App. 4th 121 (1996) .....................................................................................9

*Donell v. Mojtahedian*,
   976 F. Supp. 2d 1183 (C.D. Cal. 2013) .............................................................15, 16

*Garvey v. State Farm Fire & Cas. Co.*,
   48 Cal. 3d 395 (1989) .................................................................................9, 10, 16

*Gerawan Farming Partners, Inc. v. Westchester Surplus Lines Ins. Co.*,
   2008 WL 80711 (E.D. Cal. Jan. 4, 2008) ...............................................................10

*James & Jan, LLC v. Lexington Ins. Co.*,
   2018 WL 1409738 (C.D. Cal. Jan. 30, 2018) .......................................................1, 10

*Jordan v. Allstate Ins. Co.*,
   116 Cal. App. 4th 1206 (2004) .................................................................................9

*In re K F Dairies, Inc. & Affiliates*,
   224 F.3d 922 (9th Cir. 2000) .............................................................................12, 14

*MacKinnon v. Truck Ins. Exch.*,
   31 Cal. 4th 635 (2003) ..............................................................................11, 12, 13

*Montrose Chem. Corp. v. Admiral Ins. Co.*,
   10 Cal. 4th 645 (1995) ..............................................................................11, 12, 13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

*N.H. Ins. Co. v. Foxfire, Inc.*,
　820 F. Supp. 489 (N.D. Cal. 1993) ..........................................................................9

*Ryoo Dental, Inc. v. Thomas D. Han DMD*,
　2016 WL 6138413 (C.D. Cal. Apr. 25, 2016) .................................................15, 16

*Sebastian Int'l, Inc. v. Russolillo*,
　2005 WL 1323127 (C.D. Cal. Feb. 22, 2005)........................................................15

*Strubble v. United Servs. Auto. Ass'n*,
　35 Cal. App. 3d 498 (1973) ....................................................................................16

*Ticketmaster, LLC v. Illinois Union Ins. Co.*,
　524 F. App'x 329 (9th Cir. 2013) ..............................................................11, 12, 13

*Vardanyan v. AMCO Ins. Co.*,
　243 Cal. App. 4th 779 (2015) ......................................................................... *passim*

**RULES**

Fed. R. Civ. P. 56(a) ......................................................................................................8

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Kunde Enterprises, Inc. ("Kunde") is a family operated winery and vineyard in Sonoma Valley.  When wildfires raged across Northern California in October 2017, smoke infiltrated Kunde's facilities exposing vats, machinery, and wine products at various stages of the winemaking process.  The finished wines made during this time were damaged with a perceptible "smoke taint," rendering them unmarketable except for mere salvage, which resulted in over $6 million in loss to Kunde.

Kunde protected itself against these types of unexpected calamities by purchasing an "all risks" property insurance policy (the "Policy") from Defendant National Surety Corporation ("National Surety").  This is the broadest form of property insurance available in the market.  To obtain coverage under an all-risks policy, the insured "need only show that the damage occurred as a result of a 'direct physical loss' to the property." *James & Jan, LLC v. Lexington Ins. Co.*, 2018 WL 1409738 at *3 (C.D. Cal. Jan. 30, 2018).  The burden then shifts to the carrier to prove that an exclusion applies.  *Id*.  Absent such proof, the carrier must cover the loss.

Kunde easily carried its *prima facie* burden, as its wine damage occurred as a result of direct physical loss.  Yet, when it came time to pay Kunde's loss, National Surety refused.

At first, National Surety outright denied the claim, citing a non-existent exclusion for smoke taint to wine resulting from damage to grapes on the vine.  National Surety did not bargain for an exclusion for smoke taint (unlike other carriers), so it tried to manufacture one after the fact.  National Surety's argument not only reflected a misreading of the Policy, but also presupposed that all of the smoke tainted wines were made from grapes that were damaged by smoke.  In fact, none of the grapes used to make the wines at issue ever tested positive for smoke taint.  Moreover, much of the wine was made from grapes harvested <u>before</u> the fires even began and therefore could not possibly have suffered smoke damage on the vine, meaning that the tainting was caused by smoke infiltrating Kunde's facilities during the various stages of winemaking.

*///*

1    When faced with these indisputable facts, National Surety then shifted its position, but
2    still refused to pay the vast majority of the claim.  Two years after the loss occurred, it finally
3    agreed to cover those wines made from grapes harvested before the fires (the "Watch List"
4    wines), but only under the Policy's "Perishable Stock Coverage" that is subject to a $1 million
5    sublimit.  In addition to refusing to pay the full loss of the "Watch List" wines, National Surety
6    also continued to deny coverage for wines made from grapes harvested after the fires began (the
7    "Fire Lot" wines), again citing a non-existent "on the vine" exclusion and insisting without any
8    contemporaneous testing or verifiable evidence that the grapes were irreparably damaged before
9    smoke infiltrated Kunde's facilities during the various stages of winemaking.

10    Kunde brought the present lawsuit to require National Surety to honor its obligations
11    under the "all risk" policy it sold.  The facts required for the Court to decide Kunde's claims for
12    declaratory relief (Cause of Action One) and breach of contract (Cause of Action Two) are not
13    disputable.  Smoke infiltrated Kunde's facilities during the winemaking process resulting in
14    smoke taint to wines – a fact that National Surety admits with respect to the Watch List wines,
15    and cannot disprove with respect to the Fire Lot wines as they were made in the same facilities
16    (with some overlap in the time that the wines were in process).  Moreover, the Parties' dispute
17    concerning the scope and application of the Policy terms can be adjudicated as a matter of law.
18    Thus, the Court can and should enter partial summary judgment in Kunde's favor on its First and
19    Second Causes of Action, requiring National Surety to pay Kunde for all of its losses due to the
20    smoke tainted wines.[2]

21    **II.      BACKGROUND**

22         **A.      The Winemaking Process at Kunde**

23    Kunde produces multiple tiers of wine crafted from grapes grown on its Sonoma Valley
24    ranch.  (Joint Stipulation of Facts for Cross-Motions for Summary Judgment ("JSF") ¶ 1.)

25    _____

26    [2] Following a full-day mediation, the Parties jointly requested and were granted an Order (Dkt.
27    54) vacating all case dates so that they could file cross-motions for summary judgment at the
      suggestion of Mediator Randall Wulff (the same mediator who helped settle the wine taint case
      filed by Vintage Wine Estates, which was originally joined with this case).  Thus, the Parties are
28    in agreement that these issues may be decided by the Court through their cross-motions.

Kunde also purchases grapes from third parties for a line of products that are not marketed as estate-bottled wines, which go through the same winemaking process at Kunde's facilities as grapes grown on the estate.  (*Id.*; Declaration of Zach Long ¶ 2.)

Kunde employs five basic steps for making wine:  (i) harvesting; (ii) crushing; (iii) pressing; (iv) fermentation; and (v) aging and bottling.  (Long Decl. ¶ 3.)  After Kunde crushes its grapes, it places the "must" (a combination of juice, skins, pulp, and seeds) into vats for fermentation lasting 3-4 weeks.  (*Id.*)  Upon the completion of that fermentation, the fermented must is then put into the wine press to separate the solids from the wine and will tank settle for an additional 3 days.  (*Id.*)  The wine is then ready to be put into barrels for secondary fermentation and aging.  (*Id.*)  From date of crushing the grapes until the wine is placed in barrels is typically 4-5 weeks for red wines.  (*Id.*)

At various stages of this process, the new wine in process is exposed to air (and any smoke in the air), including when the grapes are being crushed and moved to tanks for fermentation, and when the wines are pressed after fermentation.  (*Id.* ¶ 4.; Declaration of Dr. Richard G. Peterson ¶ 5.)  Exposure to outside air also occurs during fermentation.  (Long Decl. ¶ 4; Peterson Decl. ¶ 5.)  Some of Kunde's vats are located inside, while others are located outside.  (Long Decl. ¶ 4.)  There is no way to air-tight seal Kunde's vats.  (*Id.*)  Importantly, the vats must be periodically opened throughout the winemaking process, such as during "pump overs" (which take place with red wines at least two times per day during fermentation) as well as during racking (*i.e.*, decanting clear wine from the upper parts of tanks away from the lower parts containing undissolved grape solids).  (*Id.*)  Finally, the facility is mechanically ventilated for human safety to flush the accumulated $CO_2$ out of the facility, which in turn draws in air (and any smoke in the air) from the outside.  (*Id.*)

**B.**    **The Policy**

To protect its wine and related facilities, Kunde purchased a broad "all risks" property insurance policy from National Surety under policy number S95-MZX-80977326 for the period April 1, 2017 through April 1, 2018 (the "Policy").  (JSF ¶ 2; Ex. 1 to the Joint Appendix of Exhibits ("JA") at ALLIANZ 000099, 000122; Declaration of Pat Roney ¶ 2.)  The Policy's

Property-Gard Business and Real and Personal Property coverage form has limits of $35,060,173 and "insures all risks of direct physical loss or damage" to covered property, "except as excluded or limited elsewhere in this Coverage Section."  (JSF ¶¶ 3-4; JA Ex. 1 at ALLIANZ 000140 (emphasis added).)  The Policy has an annual premium of $100,004.  (JA Ex. 1 at ALLIANZ 000100.)

## C.   The Wildfire and Resulting Smoke Taint to Kunde's Wines

In October 2017, a series of wildfires raged across Northern California, including in Napa and Sonoma Counties.  (JSF ¶ 5.)  For example, the Nuns Fire, centered in the areas to the east and north of the city of Sonoma (and encompassing the area that includes Kunde's property), merged with several other fires, growing to over 54,000 acres in size (herein, the "Wildfires").  (Id.; JA Ex. 10 (fire map); JA Ex. 11 (Google map showing Kunde's location); Request for Judicial Notice ("RJN") at 2; Declaration of James A. Tabb Decl. ¶¶ 3-4; Roney Decl. ¶ 3.)  Per the California Department of Forestry and Fire Protection, the Wildfires began on October 8, 2017, and were not contained until October 31, 2017.  (JA Ex. 9; RJN at 2; Tabb Decl. ¶ 2.)

For companies like Kunde that own wineries and conduct winemaking activities in the affected areas, the resulting smoke wreaked havoc on the lifeblood of their businesses.  (Roney Decl. ¶ 3.)  Air quality in the areas affected by the Wildfires reached "hazardous" levels during the Wildfires, the most dangerous on the EPA scale.  (JSF ¶ 5.)  Smoke lingered in the air at the Kunde property for weeks after the Wildfires began, and through the date they were fully contained, on or about October 31, 2017.  (Long Decl. ¶ 5.)  Cleanup of Kunde's winemaking facilities continued through November 3, 2017.  (JA Ex. 3 at KUNDE0000322-323; Long Decl. ¶ 5.)

All of Kunde's wine products, in various stages of the winemaking process, were exposed to the smoke during this time, which permeated the air outside and inside of Kunde's facilities, entering when the doors had to be opened and through the ventilation system.  (Long Decl. ¶ 5.)  Crushed grapes, juice, must, and fermented wine were exposed, along with Kunde's vats and all of the machinery used in the winemaking process (e.g., machines for crushing and pressing grapes).  (Id.)  Consequently, the wine made during this time had a perceptible "smoke

taint," rendering them unmarketable except for salvage value.  (JSF ¶ 6; Roney Decl. ¶ 3.)

At the time the Wildfires began, Kunde had already harvested or purchased certain grapes, crushed them, and placed the resulting must into vats to be processed into wine.  (Long Decl. ¶ 6.)  The 15 lots of finished wine made from these grapes are referred to as the "Watch List" wines.  (JSF ¶ 7.)[3]  No one disputes that smoke from the Wildfires infiltrated Kunde's facilities, vats, and machinery as the Watch List wines were being produced, and subsequent testing confirmed that the Watch List wines were smoke tainted.  (Long Decl. ¶ 6.)

Subsequent testing also confirmed that 32 lots of finished wines made from grapes harvested after the Wildfires began (the "Fire Lot" wines) were smoke tainted.  (JSF ¶7; Long Decl. ¶ 7.)  A week after the Wildfires began, Kunde sent 4 samples from its estate grapes that were still on the vine to ETS Laboratories ("ETS") for testing.  (Long Decl. ¶ 7.)  Because of the high volume of requests for testing that ETS was receiving at that time, it could test only two of the samples that Kunde sent.  (*Id.*)  Those samples were cabernet grapes from Kunde estate blocks 4CS1 and 3CS26.[4]  (*Id.*)  ETS received Kunde's samples on October 16, 2017, and provided an analysis of the samples on October 25, 2017.  (*Id.*)

ETS's analysis showed high levels of smoke-taint compounds in 3CS26 (which came from the estate block closest to the fires), and insignificant levels of smoke-taint compounds in 4CS1.  (*Id.* ¶ 8.)  While the results for 3CS26 might have been due to the grapes splitting or being crushed during transit and thereby exposed to smoke, in an abundance of caution, Kunde did not harvest the grapes from estate block 3CS26, but instead allowed those grapes to rot on the vine.  (*Id.*)  Kunde is not seeking payment for any losses related to this block of grapes.

The harvested grapes (for which there was no evidence of smoke taint, and which came from other blocks further away from the fires) were then crushed and the resulting must was placed into vats for fermentation within 6-to-8 hours after harvest.  (*Id.* ¶ 9.)  As with the Watch

---

[3] A "lot" references a batch of wine.  (Long Decl. ¶ 6.)  A "lot" can be made from grapes from a single block on the Kunde estate, from a mix of several blocks, from a single third-party source, from a mix of third-party sources, etc.  (*Id.*)

[4] The first number in these labels references the ranch code on Kunde's estate; the "CS" refers to the varietal cabernet sauvignon; and the last number refers to the vineyard block.

List wines, the crushed grapes, juice, must, and fermented wine used to make the Fire Lot wines was exposed to smoke in the air and on the vats and machinery during the various stages of winemaking.  (*Id.*)  Testing of the finished Fire Lot wines confirmed that they were smoke tainted.  (*Id.*)

Notably, the only grapes that were tested for smoke taint were the two samples sent by Kunde to ETS.  (Long Decl. ¶ 10.)  National Surety had Kunde's finished wines tested, but it never tested any of Kunde's grapes.  (*Id.*)  Thus, the only verifiable evidence concerning the cause of the taint in the Fire Lot wines centers on the crushed grapes, juice, must, and fermented wine being exposed to smoke in and around Kunde's facilities, which also indisputably caused the taint in the Watch List wines.  (*Id.*)[5]  Indeed, National Surety's own consultant, Dr. Philip Crews, concludes in his report that smoke taint in the Watch List wines "must have taken place from smoke putatively filling the Kunde winery production areas during and after the wildfires (10/8-17) while these wines were in production."  (JA Ex. 2 at KUNDE0000277.)[6]

### D.  Kunde's Loss

In total, Kunde suffered $6,047,853.38 for damaged wine lots, excluding interest. (Roney Decl. ¶ 4; JA Ex. 3 (Loss Valuation) at KUNDE0000324.)[7]  The loss calculation takes into consideration both saved costs and the money Kunde received in salvage, thus reflecting the profit Kunde would have earned but for the Wildfires.  (JA Ex. 3; Roney Decl. ¶ 4.)

---

[5] As discussed below, this critical fact is dispositive because, even if National Surety could prove that grapes used to make the Fire Lot wines were damaged by smoke while on the vine (it cannot), it still could not prove that any smoke damage to grapes on the vine was the efficient proximate cause of the taint in the finished wines given the undisputed exposure to smoke in Kunde's winemaking facilities.

[6] Dr. Crews' concession that smoke tainting in Kunde's facilities can – and did – occur is not surprising to Kunde's expert in enology and viticulture, Dr. Richard G. Peterson, who explains that "[a]ny smoke in winery air will easily contact new wine during the fermentation period." (Peterson Decl. ¶ 5.)  What surprises Dr. Peterson, however, is that Dr. Crews disregards this fact in speculating that the smoke taint to the Fire Lot wines was caused by smoke damaged grapes and ignores that none of the grapes used to make the Fire Lot wines tested positive for smoke taint.  (*Id.* ¶ 6.)

[7] The amounts for which Kunde seeks coverage for its smoke-tainted wines are highlighted in Joint Appendix Exhibit 3.

**E.      National Surety's Denial of Coverage**

Kunde promptly and timely tendered its losses for coverage under the Policy on October 16, 2017.  (JSF ¶ 9; Roney Decl. ¶ 5.)  At that time, the Wildfires were not fully contained and Kunde feared that the unharvested grapes would be lost.  (Roney Decl. ¶ 5.)  However, after the ETS testing confirmed that grapes were not smoke tainted, Kunde was able to harvest many of the grapes.  (*Id.*)  Unfortunately, the finished wines, made from the grapes harvested before and during the Wildfires that were processed as smoke continued to impact Kunde's facilities, exhibited smoke taint damage.  (*Id.*; Long Decl. ¶¶ 8-9.)  Kunde supplemented its claim accordingly.  (JSF ¶ 9; Roney Decl. ¶ 5.)

Because no one disputed that the wines had been damaged, Kunde expected that National Surety would promptly acknowledge and honor its coverage obligations.  (Roney Decl. ¶ 6.)  But National Surety did not live up to its end of the bargain.  (*Id.*)

Exactly one year after the fires started, by letter dated October 9, 2018, National Surety responded with an outright denial of Kunde's claim based on a preliminary investigation by National Surety's consultant, Chris Markell, who incorrectly concluded (without any contemporaneous testing or other evidence) that "the smoke taint which damaged the wines resulted directly from the grape's exposure to smoke from the wildfires while they were still on the vines and did not result from exposure to smoke during the production process."  (JSF ¶ 10; JA Ex. 4 at ALLIANZ 000004; Roney Decl. ¶ 7.)

On October 22, 2018, Kunde's claim administrator, Greg Skorheim, responded to National Surety stating that none of the grapes used to make the wines at issue had tested positive for smoke tainting, and thus the smoke taint damage to the Fire Lot wines occurred during the winemaking process (just as it necessarily had for the Watch List wines).  (JSF ¶ 11; JA Ex. 5 at ALLIANZ 000631; Roney Decl. ¶ 8.)  Mr. Skorheim further noted that Mr. Markell had not provided any evidence that the grapes used to make the wines were smoke damaged prior to being harvested, but that Mr. Markell had instead speculated that the cause of smoke tainting to the finished wines was inconclusive.  (JA Ex. 5 at ALLIANZ 000631-632.)  Finally, Mr. Skorheim noted that the Watch List wines would be addressed separately, given that those

1    wines made from grapes harvested before the Wildfires obviously could not have been tainted on

2    the vine.  (*Id*. at ALLIANZ 000631.)

3          By letter dated March 14, 2019, National Surety reiterated its position that the Fire Lot

4    wines made from grapes harvested after the fires were not covered "because growing crops are

5    not insured property."  (JSF ¶ 12; JA Ex. 6 at ALLIANZ 000027; Roney Decl. ¶ 10.)

6    Additionally, while National Surety acknowledged that the Policy "provides coverage for smoke

7    tainted wines on the Watch List," it asserted that the Watch List wines were not covered under

8    the $35 million Real and Personal Property Coverage because they purportedly fell within a

9    spoilage exclusion for "loss, damage or expense caused by or resulting from 'change in flavor or

10   texture or finish, decay or other spoilage.'"  (JA Ex. 6 at ALLIANZ 000031.)  Thus, National

11   Surety relegated coverage for the Watch List wines to the Policy's Perishable Stock Coverage,

12   which has a sublimit of $1 million.  (*Id*. at ALLIANZ 000035-36.)

13         On August 22, 2019, Latham & Watkins LLP, on behalf of Kunde, sent a letter to

14   National Surety reiterating that all of the smoke-tainted wines were damaged during the

15   winemaking process.  (JSF ¶ 13; JA Ex. 7 at ALLIANZ 000783; Roney Decl. ¶ 11.)  The letter

16   also explained that the Watch List wines fall within the Policy's Real and Personal Property

17   Coverage because, read in context, the spoilage exclusion does not contemplate damage due to

18   wildfires and related smoke intrusion but concerns normal variances in the winemaking process

19   resulting in decay "or other spoilage."  (JA Ex. 7 at ALLIANZ 000783)

20         National Surety responded by reiterating its prior positions.  (JSF ¶ 14; JA Ex. 8 at

21   ALLIANZ 000798-799; Roney Decl. ¶ 12.)  National Surety then paid Kunde $1 million, which

22   the Parties agreed would not operate as an accord and satisfaction of, settlement of, or waiver of

23   Kunde's claims and positions (or any portion thereof).  (JSF ¶ 18.)  This $1 million payment,

24   made two years after the Wildfires, is the only payment National Surety has made toward

25   Kunde's $6 million smoke taint loss, leaving Kunde to carry $5 million in losses for the past

26   three-and-a-half years.  (*Id*.; Roney Decl. ¶ 18.)

27   ///

28   ///

1   **III.    LEGAL STANDARDS**

2        **A.    <u>Summary Judgment Standards</u>**

3        Summary judgment is appropriate when a movant shows "there is no genuine dispute as

4   to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

5   "Cases involving interpretation of insurance contracts raise questions of law and thus are

6   particularly amendable to summary judgment." *N.H. Ins. Co. v. Foxfire, Inc.*, 820 F. Supp. 489,

7   492-93 (N.D. Cal. 1993) (internal citation omitted).  "Absent a factual dispute as to the meaning

8   of policy language, []the interpretation, construction and application of an insurance contract is

9   strictly an issue of law." *Jordan v. Allstate Ins. Co.*, 116 Cal. App. 4th 1206, 1212 (2004)

10  (quoting *Century Transit Sys., Inc. v. Am. Empire Surplus Lines Ins. Co.*, 42 Cal. App. 4th 121,

11  125 (1996) (internal citations omitted).

12       **B.    <u>The Relative Burdens Under An "All Risks" Policy</u>**

13       National Surety sold Kunde the broadest form of property coverage in the marketplace.

14  The Policy protects against "***all risks*** of direct physical loss or damage, except as excluded or

15  limited elsewhere in this Coverage Section."  (JSF ¶ 4; JA Ex. 1 at ALLIANZ 000140 (emphasis

16  added).)  As has long been recognized, the Policy provides "a special type of coverage extending

17  to risks not usually covered under other insurance, and recovery under an 'all-risk' policy will be

18  allowed for <u>all</u> fortuitous losses not resulting from misconduct or fraud, unless the policy

19  contains a <u>specific</u> provision <u>expressly excluding</u> the loss from coverage." *C.H. Leavell & Co. v.*

20  *Fireman's Fund Ins. Co.*, 372 F.2d 784, 787 (9th Cir. 1967) (emphasis added) (reversing district

21  court's denial of coverage under all-risks policy).

22       The limits of coverage under the Policy are thus "defined by the [Policy's] exclusions.'"

23  *Vardanyan v. AMCO Ins. Co.*, 243 Cal. App. 4th 779, 792 n.3 (2015) (quoting *Benavides v. State*

24  *Farm General Ins. Co.*, 136 Cal. App. 4th 1241, 1247 (2006)); *accord Garvey v. State Farm Fire*

25  *& Cas. Co.*, 48 Cal. 3d 395, 407 (1989) ("[U]nder the all-risk first party property policy, because

26  generally 'all risk of physical loss' is covered, the exclusions become the limitation on loss

27  coverage.").  Therefore, unless a specific provision expressly excludes the loss from coverage,

28  National Surety must indemnify Kunde for all manner of damage to its wine or facilities.

1    Kunde's *prima facie* burden of establishing coverage under its "all risks" Policy is very

2    low.  Kunde "does not have to prove that the peril causing his loss was covered by the policy.'"

3    *Gerawan Farming Partners, Inc. v. Westchester Surplus Lines Ins. Co*., 2008 WL 80711, at *13

4    (E.D. Cal. Jan. 4, 2008).  Instead, Kunde "need only show that the damage occurred as a result of

5    a 'direct physical loss' to the property."  *James & Jan, LLC*, 2018 WL 1409738, at *3.

6    Once this *prima facie* burden is met, then the "burden <u>shifts</u> to [National Surety] to show

7    that [Kunde's] claim is excluded from coverage" under a particular exclusion.  *Id*. (emphasis

8    added).  If National Surety cannot meet its burden of proving that an express exclusion bars

9    coverage, then Kunde is entitled to coverage under the all risks policy.

10   **IV.    THE COURT SHOULD DECLARE THAT NATIONAL SURETY HAS A DUTY
         TO PAY KUNDE FOR ITS LOSS (FIRST CAUSE OF ACTION)**

11

12      **A.    Kunde easily meets it *prima facie* burden**

13   Kunde need only show that its damages occurred as a result of a direct physical loss to an

14   insured property interest.  Kunde's wines, which are the central output of its business,

15   indisputably are an insured interest.  (JSF ¶ 12.)  Moreover, there is no dispute that Kunde's

16   wines suffered smoke taint due to the Wildfires.  (JSF ¶ 7.)  Accordingly, Kunde has met its

17   *prima facie* burden, and the burden therefore shifts to National Surety to prove that an express

18   exclusion bars coverage.  *See James & Jan*, 2018 WL 1409738 at *3; *Garvey*, 48 Cal. 3d at 406

19   ("First- and third-party coverage is today typically provided in a single policy, and under both

20   types of coverage, once the insured shows that an event falls within the scope of basic coverage

21   under the policy, the burden is on the insurer to prove a claim is specifically excluded.").

22      **B.    The Policy Does Not Exclude Losses Caused by Smoke Taint**

23   The Policy has no exclusion for smoke taint, even though National Surety acknowledges

24   that smoke taint was a known risk at the time of the 2017 Wildfires.  National Surety, unlike

25   other carriers, did not bargain for such an exclusion in this Policy.  Nevertheless, in an effort to

26   avoid the $35 million limit under the Policy's Real and Personal Property Coverage, National

27   Surety tries to manufacture a smoke taint exclusion after the fact.  It contends that all of Kunde's

28   losses are barred in the first instance by a "spoilage" exclusion.  It then argues that the Policy

benevolently restores coverage partially for these "spoilage" losses under the $1 million Perishable Stock Coverage, thereby limiting Kunde's recovery to a fraction of its actual losses. National Surety cannot prove either assertion.

### 1. National Surety Cannot Prove That Kunde's Losses Fall Within The "Spoilage" Exclusion

National Surety cites an exclusion for "loss, damage or expense caused by or resulting from shrinkage, evaporation, leakage of contents, change in flavor or texture or finish, decay or other spoilage." (JA Ex. 6 at ALLIANZ 000030.) However, as Kunde explained in its August 22, 2019 letter, that exclusion does not apply because it also states that "if loss or damage from a covered cause of loss results, [National Surety] will pay for that resulting loss or damage." (JA Ex. 7 at ALLIANZ 000783; JA Ex. 1 at ALLIANZ 000142.) Any change to Kunde's wines was the result of smoke taint caused by the Wildfires, which is a covered cause of loss. Accordingly, the exclusion does not apply here.

Under well-established California law, coverage exclusions must be construed narrowly, with all ambiguities resolved against the insurer and in favor of the insured. *See MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003) ("[I]nsurance coverage is 'interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] . . . exclusionary clauses are interpreted narrowly against the insurer.'"); *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 667 (1995) ("In the insurance context, we generally resolve ambiguities in favor of coverage"); *AIU Ins. Co. v. Super. Ct.*, 51 Cal. 3d 807, 822 (1990) (if policyholder's interpretation of coverage is one reasonable meaning of disputed language, that interpretation governs); *Ticketmaster, LLC v. Illinois Union Ins. Co.*, 524 F. App'x 329, 331 (9th Cir. 2013) (exclusion was "reasonably susceptible to at least two meanings, particularly in light of the Policy's other 27 exclusions, and is thus, ambiguous"); *Vardanyan*, 243 Cal. App. 4th at 792 (exclusions must be narrowly construed, "consistent with their terms and purpose").

Read in context, the exclusion cannot reasonably apply to "direct physical damage" caused by wildfire and related smoke infiltration to the insured's facilities but, instead, concerns normal variances in the winemaking process. (JA Ex. 1 at ALLIANZ 000142.) The canon of

contract interpretation *noscitur a sociis*, "*i.e.*, where a word is used in a list, its meaning can be demonstrated by the other items in the list," supports this conclusion. *1901 First St. Owner, LLC v. Tustin Unified Sch. Dist.*, 21 Cal. App. 5th 1186, 1194 (2018); *see also Atain Specialty Ins. Co. v. Szetela*, 2016 WL 1138139, at *5 (E.D. Cal. Mar. 23, 2016) (narrowly construing an exclusion in an insurance policy based, in part, on the canon "*noscitur a sociis*, *i.e.*, the meaning of one word may be discerned from those surrounding it"). The terms here refer to ordinary variances in the winemaking process, such as "shrinkage," "evaporation," "decay," and "other spoilage." None of these terms refer to damage caused by a wildfire.

Yet in National Surety's view, any damage to the wine, whether caused by fire, explosion, or any other physical force, would necessarily be subject to the "spoilage" exclusion. Such an absurd result would effectively render the broader coverage a nullity. Moreover, even if this sweeping interpretation were a reasonable alternative to Kunde's construction, it would only create ambiguity that must be resolved against National Surety. *See MacKinnon*, 31 Cal. 4th at 648; *Montrose*, 10 Cal. 4th at 667; *AIU Ins. Co.*, 51 Cal. 3d at 822; *Ticketmaster*, 524 F. App'x at 331; *Vardanyan*, 243 Cal. App. 4th at 792. National Surety therefore cannot carry its burden to establish that Kunde's losses are barred by the exclusion.

### 2. National Surety Cannot Prove That Kunde's Losses Are Subject To The Perishable Stock Coverage $1 Million Sublimit

National Surety also claims that the Perishable Stock Coverage limits Kunde's recoverable losses to $1 million, effectively reducing the $35 million in coverage otherwise provided for Real and Personal Property Coverage. As an initial matter, the Policy does not state that the Perishable Stock Coverage provision can be used as a basis for excluding or limiting the protection otherwise available under the Real and Personal Property Coverage. *See In re K F Dairies, Inc. & Affiliates*, 224 F.3d 922, 928 (9th Cir. 2000) ("An exclusion or limitation on policy coverage cannot be read into the insurance contract; rather, such provisions must be 'conspicuous, plain, and clear.'"). Moreover, to the extent that the Perishable Stock Coverage can be read as an exclusion or limitation to the Real and Personal Property Coverage, it must be construed narrowly, with all ambiguities resolved in favor of Kunde. *See MacKinnon*, 31 Cal.

1   4th at 648; *Montrose*, 10 Cal. 4th at 667; *AIU Ins. Co.*, 51 Cal. 3d at 822; *Ticketmaster*, 524 F.

2   App'x at 331; *Vardanyan*, 243 Cal. App. 4th at 792.

3           The Perishable Stock Coverage works hand-in-hand with the "spoilage" exclusion

4   discussed above, by giving back some coverage for such losses that are otherwise excluded.

5   Like the "spoilage" exclusion, this give-back provision also concerns spoilage.  The exclusion

6   and give-back provision mirror each other – if one doesn't apply, the other doesn't either.

7           Specifically, the give-back provides $1 million for "direct physical loss or damage to

8   **perishable stock** caused by or resulting from **spoilage**" while at an insured premises.  (JA Ex. 1

9   at ALLIANZ 000201.)[8]  The Policy defines "spoilage" as:

10          the act of damage to or contamination of **perishable stock.  Spoilage** of **perishable
            stock** includes any impurity caused by contact or mixture with a foreign substance.

11          Foreign substances include **wine products** which are not meant to be a part of the
            wine recipe or blend.  **Spoilage** does not mean contact or mixture with any **wine

12          products** intended to be a part of the wine recipe or blend.

13  (*Id.*)  The Policy does not define "foreign substance," and the example it gives – "wine products

14  which are not meant to be a part of the wine recipe or blend" – has nothing to do with damage

15  due to fire.

16          No reasonable insured would equate a fire loss – one of the primary reasons one

17  purchases property insurance – with "spoilage."  At best, this awkwardly defined term is

18  ambiguous and must be construed against National Surety and in favor of Kunde.  *See*

19  *MacKinnon*, 31 Cal. 4th at 648; *Montrose*, 10 Cal. 4th at 667; *AIU Ins. Co.*, 51 Cal. 3d at 822;

20  *Ticketmaster*, 524 F. App'x at 331; *Vardanyan*, 243 Cal. App. 4th at 792.  And because the

21  Policy is an all-risks policy, National Surety cannot prevail if it cannot prove that an express

22  exclusion or limitation applies – which it cannot do here.  Thus, National Surety cannot use this

23  $1 million spoilage give-back to deprive Kunde of millions of dollars of coverage for fire loss.

24      **C.    National Surety Also Cannot Prove That The Fire Lot Wines Are Excluded
                Due To Alleged Smoke Damage To Grapes On The Vine**

25

26          National Surety and its consultant, Dr. Crews, concede that the Watch List wines "must

27

28  ───────────────────
    [8] Bold text from quoted Policy language is bolded in the Policy to indicate a defined term.

have" been tainted by smoke that infiltrated Kunde's facilities during the winemaking process.
Yet, National Surety asserted in its March 2019 letter that "there is no coverage under the
Policy's terms and conditions for the Fire Lot wines whose grapes became smoke tainted while
still on the vine because growing crops are not insured property." (JA Ex. 6 at ALLIANZ
000027.)

This conclusory assertion suffers three fatal flaws. First, Kunde is seeking recovery for
smoke damage to its finished wines, which are plainly insured property, not damage or loss of
crop production. Had National Surety wished to exclude damage to insured wines allegedly
caused by tainted grapes, it should have done so, but it did not. Second, even if there were such
a limitation, National Surety cannot prove that any of the grapes used to make the Fire Lot wines
were damaged by smoke while they were on the vine. And finally, even if there were such
evidence, National Surety could not establish that any "on the vine" damage was the efficient
proximate cause of the smoke taint in the finished wines rather than the smoke exposure that
infiltrated Kunde's facilities during the winemaking process.

### 1. There Is No Exclusion For Smoke Tainting To Wine Caused By Smoke Damage To Grapes On The Vine

The Policy does not limit or otherwise exclude – much less clearly and conspicuously
exclude – smoke taint to wine resulting from grapes damaged by smoke while still on the vine.
*See In re K F Dairies, Inc. & Affiliates*, 224 F.3d at 928 ("An exclusion or limitation on policy
coverage cannot be read into the insurance contract; rather, such provisions must be
'conspicuous, plain, and clear.'").

National Surety points to the Policy's "Property Not Insured" provision, which excludes
"[l]and, water, growing plants and crops outside of buildings, standing timber or outdoor trees,
shrubs, lawns." (JA Ex. 4 at ALLIANZ 000006; JA Ex. 1 at ALLIANZ 000140.) But even if
this provision were read to exclude coverage for damaged grapes on the vine, it says nothing
about coverage for wines. Kunde's insurance claim concerns smoke-tainted <u>wines</u>, which are
undisputedly covered under the Policy, and Kunde's reasonable expectation to recover its losses
for this insured property must be protected.

### 2. National Surety Cannot Prove That Any Grapes Used To Make The Fire Lot Wines Were Damaged By Smoke While On The Vine

Even if there were some limitation for smoke tainting to wine caused by damage to grapes on the vine, National Surety cannot prove that any grapes used to make the Fire Lot wines were smoke tainted before they were harvested.

The only grapes that were ever tested were from Kunde estate blocks 4CS1 and 3CS26. (Long Decl. ¶ 10.)  The test of the 4CS1 sample confirmed only insignificant levels of smoke compounds.  (*Id*. ¶ 8.)  The test of the 3CS26 sample confirmed higher levels of smoke compounds; and while this could have occurred while the sample was in transit, Kunde chose not to harvest the 3CS26 block of grapes.  (*Id*.)  Thus, no grapes used to make the Fire Lot wines ever tested positive for smoke damage.

This is critical.  National Surety's first consultant, Mr. Markell, concluded only that Kunde's testing "was not sufficient to demonstrate that the Fire Lot grapes were free from smoke taint when they were brought to the winery for processing."  (JA Ex. 6 at ALLIANZ 00028.) Mr. Markell did not prove that the grapes used to make the Fire Lot wines were smoke tainted – he merely concluded that it could not be ruled out.  Such a conclusory assessment cannot prevent the Court from entering summary judgment in Kunde's favor.  *See Ryoo Dental, Inc. v. Thomas D. Han DMD*, 2016 WL 6138413, at *7 (C.D. Cal. Apr. 25, 2016) ("'[M]ere speculation, intuition or guessing' does not constitute a valid inference and is insufficient to allow the non-moving party to survive summary judgment.'") (quoting *Sebastian Int'l, Inc. v. Russolillo*, 2005 WL 1323127, at *9 (C.D. Cal. Feb. 22, 2005)); *Donell v. Mojtahedian*, 976 F. Supp. 2d 1183, 1188 (C.D. Cal. 2013) ("Speculation, though, is insufficient, as [the non-moving party] was required to 'set forth specific facts showing that there is a genuine issue for trial.'") (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986)).

Likewise, National Surety's second consultant, Dr. Crews, looked at test results from the finished wines and speculated that the smoke taint to the finished wines originated from grapes that were smoke tainted while on the vine.  (JA Ex. 2; Peterson Decl. ¶ 6.)  His speculation was based on his disagreement with Kunde's expert on the chemistry of smoke tainting, and also on

1   his purported inability to explain the smoke taint to the Watch List wines – even though he

2   conceded that the Watch List wines "must have" become smoke tainted in Kunde's facilities

3   during the wine making process.  (JA Ex. 2 at KUNDE0000277.)  Dr. Crews' speculation is not

4   based on any testing of the grapes used to make the Fire Lot wines because National Surety

5   conducted no such tests.  (Long Decl. ¶ 10.)  His speculation is not evidence; it is not sufficient

6   to defeat summary judgment (*see Ryoo Dental* and *Donell*, cited above); and it certainly is not

7   sufficient to deprive Kunde of millions of dollars in all-risks insurance coverage.

8         **3.**     **National Surety Cannot Prove That Any Smoke Damage To Grapes On The Vine Was The Efficient Proximate Cause Of Smoke Taint To The Finished Wines Given The Smoke Exposure In Kunde's Facilities**

9

10   Even if National Surety could prove that any of the grapes used to make the Fire Lot

11   wines were damaged by smoke while on the vine, it would still have to prove that such smoke

12   damage was the efficient proximate cause of the smoke taint to the finished Fire Lot wines rather

13   than the smoke exposure in the facilities during the winemaking process.  National Surety cannot

14   meet this burden, especially where its own consultant concedes that smoke exposure in the

15   facilities "must have" caused the smoke taint to the Watch List wines.

16   The "efficient proximate cause" doctrine applies where a loss involves multiple risks or

17   perils, some covered and some not.  *Garvey*, 48 Cal. 3d at 399.  Under this doctrine, the

18   "efficient proximate cause" of a loss is the "predominant" or "most important" cause of a loss.

19   *Id.* at 403, 406.  The doctrine is intended to create a "workable rule of coverage that provides a

20   fair result within the reasonable expectations of both the insured and the insurer."  *Id.* at 404.

21   With an all-risks policy, however, "'the insured does not have to prove that the peril

22   proximately causing his loss was covered by the policy.  This is because the policy covers ***all***

23   ***risks*** save for those risks specifically excluded by the policy.'"  *Vardanyan*, 243 Cal. App. 4th at

24   796 (emphasis added) (quoting *Strubble v. United Servs. Auto. Ass'n*, 35 Cal. App. 3d 498, 504

25   (1973)).  Instead, the insurance carrier "'must prove the policy's non-coverage of the insured's

26   loss—that is, that the insured's loss was proximately caused by a peril specifically excluded from

27   the coverage of the policy.'"  *Id.* at 796-97 (quoting *Strubble*, 35 Cal. App. 3d at 504).

28

1   National Surety cannot satisfy this burden because there is no discernable way to identify,

2   much less quantify or differentiate, smoke taint caused by exposure in Kunde's facilities during

3   the winemaking process (which we know happened – *see, e.g.*, the Watch List wines), versus any

4   smoke taint that might have resulted from any grapes that might have been damaged by smoke

5   while on the vine.  (*See, generally*, Peterson Decl. ¶¶ 4-6.)  Therefore, even if the exclusion that

6   National Surety cites existed (it does not), National Surety could not carry its burden of proving

7   that such exception applies here.

8   **V.   THE COURT SHOULD SUMMARILY ADJUDICATE NATIONAL SURETY'S BREACH (SECOND CAUSE OF ACTION)**

9

10   If the Court finds that National Surety had a duty to pay Kunde's losses, National Surety

11   has breached that duty because it only paid $1 million of these losses.  (JSF ¶ 18; Roney Decl. ¶

12   13.)  Accordingly, the Court should summarily adjudicate Kunde's breach and award Kunde

13   $6,047,853.38 in damages, plus interest, minus the $1 million payment that National Surety has

14   made.  (JA Ex. 3 at KUNDE0000324; Roney Decl. ¶¶ 4, 13.)[9]

15   **VI.   CONCLUSION**

16   A carrier's burden of disproving coverage under an "all risks" property insurance policy

17   is heavy, and National Surety falls well short of lifting that burden here.  Thus, for the foregoing

18   reasons, Kunde respectfully requests that the Court grant Kunde's motion for partial summary

19   judgment and enter an order declaring National Surety's duty to pay Kunde's loss (First Cause of

20   Action), summarily adjudicating National Surety's breach (Second Cause of Action), and

21   awarding Kunde its damages, plus interest.

22

23

24

25

26

27

---

28   [9] Kunde recognizes that pre-judgment interest as to $1 million of its claim ceased to accrue when National Surety made its $1 million payment in April 2021.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW

1   DATED:        February 18, 2022          LATHAM & WATKINS LLP

2                                            /s/ James A. Tabb
                                             Brook B. Roberts # 214794CA
3                                            James A. Tabb # 208188CA
                                             Michael L. Huggins # 305562CA
4                                            LATHAM & WATKINS LLP
                                             12670 High Bluff Drive
5                                            San Diego, CA 92130
                                             858.523.5400 telephone
6                                            858.523.5450 fax
                                             brook.roberts@lw.com
7                                            jimmy.tabb@lw.com
                                             michael.huggins@lw.com
8

9                                            *Attorneys for Plaintiff Kunde Enterprises, Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28